Reginald ROBINSON, Petitioner,

v.

Jimmy STEGALL, Respondent,

No. CIV. 97–CV–70308–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 8, 2004.

Reginald Robinson, Detroit, MI, Pro se.

Elizabeth L. Jacobs, Detroit, MI, for Petitioner.

Arthur E. D'Hondt, Brad H. Beaver, Michigan Department of Attorney General, Lansing, MI, for Respondent.

## OPINION AND ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

### I. Introduction

Petitioner seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on the Sixth Amendment claim that dual representation denied petitioner the right to counsel, the right to the effective assistance of counsel and the right to testify on his own behalf.

Petitioner and his co-defendant Carl Thacker were represented until the final pre-trial conference by the same attorney, Ronald Goldstein, who was retained by Carl Thacker's family. Attorney Goldstein represented Carl Thacker at the final conference and at trial. An associate and salaried employee of Goldstein, attorney Mark Butler, represented Petitioner at the final conference and at trial.

Petitioner challenges the legality of his conviction on August 26, 1992, after a bench trial in the Recorder's Court for the City of Detroit of one count of kidnapping, M.C.L. § 750.349. Petitioner was sentenced to ten to twenty years imprisonment for this offense. The Court concludes for the following reasons that the petition should be granted.

### II. Factual Background

Petitioner was convicted of kidnapping Lashelle Barnes. The Michigan Court of Appeals summarized the facts of the case as follows:

Nine-year old Lashelle Barnes testified at trial that she was walking up the

1. Staff Attorney, Marty Cadwell, provided quality research assistance.

street with her sister Michelle when she observed a car full of men repeatedly driving back and forth down the street. She testified the automobile stopped, and defendant exited and then grabbed her, pulling her into the car. She was told by defendant not to cry because she was not going to be harmed. Lashelle testified she heard from the men in the car that she was being taken to Mt. Clemens. She was taken by her captors to three different houses, staying at the third house for a long time. Lashelle testified defendant remained with her from the time she was abducted until another person dropped her off within a few blocks of her home that same night. Lashelle further testified that she identified codefendant Thacker and another person named Serge from a police lineup, and identified defendant from a photo array. She remembered describing defendant to police on the day of the incident as light-skinned with a mustache. She testified the pictures of the men she was shown looked like defendant. She also recalled that some of the men in the photo array had beards.

Michelle Barnes, age twelve, testified that on April 5, 1992, defendant was riding in a car driven by Thacker. The car pulled up near Michelle and her sister, and defendant told them that he owed their Uncle Rocky some money. Defendant showed them money which caused her and her sister to approach the car. When the two girls were close to the car, defendant pushed open the already half-open door and tried to grab Michelle, but only managed to hold Lashelle. Her sister was then thrown into the front seat and the car drove away. Michelle further testified that she identified defendant from pictures shown to her by police. She testified that the pictures of the men looked like defendant, but she could not recall if some of

them had facial hair, and was unsure if all the men in the pictures had a light or dark complexion.

Detroit Police Officer Donald Shaw testified that he conducted the photographic showup where defendant was identified. He testified that pictures of five persons were used in the showup and that defendant had counsel present. Three of the men had beards and all the photos except defendant's were Polaroids. Shaw admitted that only defendant's picture contained a placard on his chest and that defendant's photo showed more of the chest area than the other photos. Shaw testified that the man in the photograph to the left of defendant's photograph was thinner than defendant.

After the prosecution rested, defendant asked the trial court to suppress the in-court identifications of defendant by Lashelle and Michelle because the photo lineup was unduly suggestive due to the fact that defendant's photo was not a Polaroid like the others, one of the individuals was considerably thinner than defendant, and the placard on defendant's chest in the photograph indicated defendant was previously under arrest.

The court denied defendant's motion, finding the photo lineup was not unduly suggestive. The court stated that although defendant's picture was slightly larger than the others and defendant did have a booking number in front of his chest, thus distinguishing him from the other four persons in the photo array, another man in the photos had writing on his shirt that looked a lot like the placard in front of defendant. The court further noted that three of the men, including defendant, were wearing red shirts, and observed that the court would have had a difficult time picking defendant out of the array. The court recalled that the victim testified the men

in the photographs all looked alike, and that she had an opportunity to observe defendant's face for an extended period of time prior to the identification.

*People v. Robinson,* No. 158824 (Mich.Ct. App. January 5, 1996) at 1–2.

Petitioner and his co-defendant Carl Thacker were charged in the same complaint and warrant. Although the then-alleged facts of the case indicated that both defendants could have been charged with kidnapping and attempted kidnapping, Petitioner was charged with kidnapping while Thacker was charged only with attempted kidnapping. The maximum penalty for kidnapping is life imprisonment. M.C.L. § 750.349. The maximum penalty for attempted kidnapping is five years imprisonment. M.C.L. § 750.92(2).

On April 15, 1992, Petitioner and his co-defendant, both then represented by Ronald Goldstein, appeared for a preliminary examination at the 36th District Court in Detroit. Upon the advice of counsel, they both waived their right to a preliminary examination. On April 22, 1992, both defendants, represented by Ronald Goldstein, appeared for an arraignment on the information. On April 24, 1992, both defendants, represented by Ronald Goldstein, appeared for a calendar conference.

On May 21, 1992, both co-defendants appeared for their final conference. No motions had been filed on Petitioner's behalf. Ronald Goldstein continued to represent Petitioner's co-defendant Carl Thacker. However, Mark Butler, an employee of Ronald Goldstein, began to represent Petitioner at the final conference. On that date, upon the advice of counsel, Petitioner waived his right to a jury trial.

At the final conference on May 21, 1992, the prosecution attempted to amend the information so that both co-defendants could be charged with kidnapping and attempted kidnapping. If allowed, such an amendment would have required Mr. Thacker, who then faced only the five-year attempt charge, to also face the life offense kidnapping charge. Mr. Goldstein objected, noting that it was past the due date for motions in the case. Mr. Butler joined in this objection, on Petitioner's behalf. Because Petitioner was already charged with the life offense of kidnapping, amending the information for him would only have added the five-year attempt charge. When the prosecution sought to have the case remanded for a preliminary examination, Mr. Goldstein objected, noting that the preliminary examination had been waived and the prosecution had not objected to the waiver.

The trial court denied the prosecution's motion to amend the information against Mr. Thacker.

After the final pre-trial conference, the prosecution issued a new warrant against Petitioner charging him with attempted kidnapping of Michelle Barnes as the complainant. The prosecution did not issue a complaint against Mr. Thacker for kidnapping. Petitioner's preliminary examination on the attempt charge was held on July 31, 1992, eleven days before his trial was scheduled on the kidnapping charge.

On August 11, 1992, the date set for trial, Mr. Butler objected to Petitioner being forced to go to trial on the attempt charge at that time. Mr. Butler noted that Petitioner had only been arraigned the previous Friday and said he (Mr. Butler) was not prepared to go to trial on the attempt charge. Mr. Butler acknowledged that the two alleged crimes arose out of the same incident and factual circumstances, but argued that the crimes were separate and involved different complainants. He requested an adjournment. However, after noting that he had not yet had an opportunity to review the prelimi-

nary examination transcript, Mr. Butler withdrew his objection without explanation.

During a discussion of the prosecutor's request to increase the charge against co-defendant, the trial court asked the prosecution why Mr. Thacker had not been charged with kidnapping in the first place. The prosecution admitted that this had simply been a mistake.

Petitioner and his codefendant had a waiver trial on August 11, 1992. Petitioner was charged with kidnapping and attempted kidnapping. Petitioner's codefendant Carl Thacker was charged with attempted kidnapping. Neither testified.

At the close of the prosecution's proofs, Petitioner informed the trial court that he wanted to discharge his attorney because he thought he was not being represented properly. The trial court told Petitioner that his only choices were to keep the lawyer he had (Mark Butler), or represent himself. When the trial resumed on August 26, 1992, Petitioner again protested to the court that he wanted to replace his attorney, because he was not satisfied with his representation. Petitioner stated on the record that "I want to testify but not with him as my attorney." The trial court denied Petitioner's request to be allowed to replace his attorney. Petitioner did not testify.

The trial court granted the defense a thirteen-day continuance to attempt to locate two potential defense witnesses identified as Chris and James, alleged to be occupants of one of the cars. The defense failed to locate Chris or James.

Petitioner again stated on the record that he was dissatisfied with his defense counsel, that he wanted to fire his attorney, and that his family was in the process of getting him another attorney. The trial judge denied Petitioner's request to discharge his counsel and hire substitute counsel.

Petitioner was convicted of kidnapping Lashelle Barnes and acquitted of the attempted kidnapping of Michelle Barnes. Co-defendant Carl Thacker was acquitted of the attempted kidnapping of Michelle Barnes, the only charge he faced.

### III. Procedural History

Petitioner was convicted of kidnapping after a bench trial. Petitioner was sentenced to ten to twenty years imprisonment.

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, raising the following issues:

I. Pre-trial identification procedures were impermissibly suggestive giving rise to an substantial risk of irreparable misidentification.

II. The trial court misscored Petitioner's guideline sentence score.

III. The trial court abused its discretion in denying Petitioner's request to discharge his attorney and obtain new counsel.

A divided Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Robinson,* No. 158824 (Mich.Ct.App. January 5, 1996). Judge White in dissent found that the trial court abused its discretion in denying Petitioner's request to obtain new counsel. Judge White would have remanded to the trial court for a hearing on whether Petitioner could show good cause for requesting substitute counsel. The Michigan Supreme Court denied Petitioner's application for leave to appeal with two Justices dissenting. *People v. Robinson,* 453 Mich. 971, 560 N.W.2d 626 (1996). Justices Levin and Cavanagh would have granted leave to appeal.

On January 24, 1997, Petitioner filed a petition for a writ of habeas corpus in

federal district court. On December 6, 1999, a consent judgement was entered in which it was agreed that the case would be remanded to the state trial court so that a record could be made on Petitioner's Sixth Amendment claims. The consent judgment stated that the hearing was to be considered a part of Petitioner's appeal of right.

On March 2 and March 3, 2000, a *Ginther* hearing was held in the state trial court concerning whether Petitioner received the effective assistance of trial counsel.[2] On March 6, 2000, the trial court denied Petitioner's motion for a new trial based on a claim of ineffective assistance of counsel.[3]

On March 3, 2002, Petitioner filed a brief after remand to state court maintaining that dual representation denied Petitioner the right to counsel, the right to the

effective assistance of counsel, and the right to testify on his own behalf. On May 13, 2002, Respondent filed a supplemental brief on the merits addressing Petitioner's right to counsel and ineffective assistance of counsel claims. On June 17, 2002, Petitioner filed a motion for a decision on his Sixth Amendment claims, noting his concern that if Respondent successfully appeals this Court's June 6, 2002, Order granting the writ, without a decision on the underlying issue, any future court reviewing the case may consider this issue waived.

Accordingly, this Court shall now address Petitioner's claims.

### IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the

---

**2.** An evidentiary hearing to determine whether the factual basis existed to support a claim of ineffective assistance of counsel is called a *Ginther* hearing in Michigan. *See People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973).

**3.** At the end of the hearing, counsel requested that the court advise Petitioner of his appellate rights, as counsel considered the hearing a part of Petitioner's appeal of right and he would need appointed counsel to continue.

A claim of appeal from March 6, 2000, decision was filed and new counsel was appointed. On July 7, 2000, before the time for filing appellant's brief had expired, the Chief Judge of the Michigan Court of Appeals entered an order dismissing the claim of appeal because "a criminal defendant may only challenge an order denying a motion for relief from judgment under M.C.R. 6.500 et seq." by filing an application for leave to appeal. *People v. Robinson*, No. 227154 (Mich.Ct.App. July 7, 2000). A motion for rehearing was denied on August 31, 2000. *People v. Robinson*, No. 227154 (Mich.Ct.App. August 31, 2000). Judge Helen N. White would have granted rehearing.

Petitioner sought leave to appeal in the Michigan Supreme Court. That court denied leave to appeal because it was not persuaded

that the question presented should be reviewed. *People v. Robinson*, 464 Mich. 857, 627 N.W.2d 605 (2001).

On June 6, 2002, this Court entered an Order enforcing the Consent Judgment and conditionally granting the writ of habeas corpus, after concluding that the requirements of the Consent Judgment had not been met because the Michigan Court of Appeals failed to consider the trial court's denial of Petitioner's motion for a new trial after his *Ginther* hearing as part of Petitioner's appeal of right. The Order stated that the State must retry Petitioner within 120 days of the order's date or this Court would issue an additional writ unconditionally releasing Petitioner from state custody.

On July 5, 2002, Respondent appealed this Court's Order issuing the writ of habeas corpus. On September 4, 2002, Respondent filed a motion to stay the case pending appeal. This Court denied the motion for a stay. The Sixth Circuit Court of Appeals reversed this Court's grant of the writ based on its finding that the consent agreement had been violated and remanded the case to this Court for further proceedings consistent with its opinion. *Robinson v. Stegall*, 355 F.3d 916, 920 (6th Cir.2004).

standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998); *Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[4]; *see also Cremeans v.*

*Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable applica-

---

4. 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

tion" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11, 120 S.Ct. 1495 (emphasis in original).

■■■ When a state court has not articulated its reasoning when denying a constitutional claim, a federal habeas court is obligated to conduct an independent review of the record and applicable law. *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000).[5]

With this standard in mind, the Court proceeds to address the petition for a writ of habeas corpus.

## V. Analysis

Petitioner seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on the Sixth Amendment claim that dual representation denied him the right to counsel, the right to the effective assistance of counsel and the right to testify on his own behalf. Petitioner and his co-defendant Carl Thacker were represented by the same attorney, Ronald Goldstein, or Goldstein's employee, Mark Butler, from the date scheduled for the preliminary examination (which both co-

defendants waived on advice from Goldstein), through all pretrial proceedings, trial, and sentencing.

## A. Petitioner was denied the effective assistance of counsel by an actual conflict of interest.

■■ A criminal defendant is entitled to the effective assistance of counsel free from conflict. *Holloway v. Arkansas,* 435 U.S. 475, 483–84, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Petitioner claims that he was denied this right because he and co-defendant Thacker were represented by the same attorney, Ronald Goldstein, until the final pretrial conference, and he was represented by Goldstein's employee, Mark Butler, thereafter. Petitioner argues that the performances of Goldstein and Butler were adversely effected because they labored under a conflict of interest.

The Sixth Circuit has summarized the difference between the typical ineffective assistance of counsel claim and a claim based on an allegation that counsel was burdened by a conflict of interest as follows:

> Conflict of interest cases involve a slightly different standard than that used in traditional ineffectiveness claims. *See* [*Thomas v. Foltz,* 818 F.2d 476, 480 (1987).] Where there is conflict of interest, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's

**5.** "By its terms, this provision [28 U.S.C. § 2254(d)] only applies to claims that were 'adjudicated on the merits in State court proceedings.'" *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir.2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir.2003) and *Newton v. Million,* 349 F.3d 873, 878 (6th Cir.2003)). Where no state court has adjudicated the merits of a petitioner's federal constitutional claim(s), the deferential standard of review set forth in section 2254(d) is inapplicable. *See, e.g.,Maples,* 340 F.3d at 436 ("Where, as here, the state court did not assess the merits of a claim properly raised in a

habeas petition, the deference due under [the Act] does not apply.") (*citing Williams v. Coyle,* 260 F.3d 684, 706 (6th Cir.2001)); *Newton,* 349 F.3d at 878 (same). *Cf. Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003) (reasoning that because no state court had determined whether the petitioner had demonstrated the requisite prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), its "review [of that issue was] not circumscribed by a state court conclusion...").

duties." *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, when an actual conflict of interest exists, prejudice is presumed. *See id.* Prejudice is presumed, however, "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 345–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Thus, while the rule is rigid, it is not a *per se* rule. *See id.*

*United States v. Hall,* 200 F.3d 962, 965 (6th Cir.2000).

 In short, prejudice will be presumed upon a showing that a conflict existed which adversely affected counsel's performance. First, the petitioner must show that his attorney "actively represented conflicting interests." *Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708. "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation." *Moss v. United States,* 323 F.3d 445, 463–64 (6th Cir.2003). The petitioner must point to "specific instances in the record to suggest an actual conflict or impairment of their interests." *Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir.1987) (internal quotation omitted). A petitioner must:

> make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.

*Id.* (internal quotation omitted).

Once a conflict of interest is established, the petitioner must demonstrate that the conflict "actually affected the adequacy of his representation." *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. 1708.[6] "[T]he standard requires a choice by counsel, caused by the conflict of interest." *McFarland v. Yukins,* 356 F.3d 688, 706 (6th Cir.2004). Prejudice is presumed upon such a showing. *United States v. Baker,* 256 F.3d 855, 859 (9th Cir.2001).

> Although the choice caused by the conflict does not have to be prejudicial in the sense of causing the defendant to lose the case, . . . the reasonableness of counsel's choice can be relevant as a factor in proving the choice was caused by conflict. A defendant or habeas petitioner does not have to produce direct evidence, such as the lawyer's testimony, that the lawyer chose to do one thing in order to accommodate a client's interests. Causation can be proved circumstantially, through evidence that the lawyer did something detrimental or failed to do something advantageous to one client that protected another client's interests. "[B]oth taking an action and failing to take actions that are clearly suggested by the circumstances can indicate an adverse effect." *Mickens v.*

---

**6.** In *Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court stated that the *Cuyler* standard:

> is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.

*Id.* at 172 n. 5, 122 S.Ct. 1237.

The Sixth Circuit Court of Appeals subsequently held that, while *Mickens* may have changed the terminology of the *Cuyler* test, it did not change the substance of the test. *McFarland v. Yukins,* 356 F.3d 688, 706 (6th Cir.2004). Thus, this Court shall continue to apply the substantive test articulated in *Cuyler* and its progeny.

*Taylor,* 240 F.3d 348, 360 (4th Cir.2001) (*en banc*).

*McFarland,* 356 F.3d at 706.

In the present case, the Michigan Court of Appeals and the trial court denied Petitioner's conflict of interest-based Sixth Amendment claims without extended discussion. However, these claims were denied on the merits by the state courts. Therefore, this Court must determine whether or not these decisions of the Michigan courts were reasonable applications of and/or contrary to applicable federal constitutional law.

In Petitioner's direct appeal, the Michigan Court of Appeals addressed this question as follows:

> Next, defendant alleges that his counsel had a conflict of interest. In this case, defendant was tried with a codefendant. The record indicates that defendant and his codefendant were apparently represented by attorneys associated in the same law firm. M.C.R. 6.005(F) (Multiple Representation) provides that when codefendants are represented by lawyers associated in a law practice, the trial court must inquire into the potential for a conflict of interest. Thus, defendant specifically argues that M.C.R. 6.005(F) was violated because his representation presented "a classic potential conflict of interest...," and the provisions of M.C.R. 6.005(F) were not followed in this case.
>
> No objection appears on the record below to the representation of defendant and his codefendant by attorneys associated in the practice of law. In *People v. Rhinehart,* 149 Mich.App. 172, 174–75, 177–78, 385 N.W.2d 640 (1986), this Court held that where no objection is

made to joint representation, a violation of GCR 1963, 785.4(4)(a predecessor of M.C.R. 6.005(F)) is not grounds for reversal "where there is 'no showing of a conflict of interest actually affecting the adequacy of representation.'"

> On appeal, defendant alleges only the potential for a conflict of interest. Our review of the record indicates that the only prosecution witness cross-examined by codefendant's counsel was the officer who conducted the photo-showup, and that co-counsel elicited no testimony damaging to defendant. *Cf. Rhinehart, supra.,* at 175–76, 385 N.W.2d 640. Neither defendant nor his codefendant presented a defense. Thus, our review of the record reveals no conflict of interest actually affecting the adequacy of defendant's representation. *Id.*

*People v. Robinson,* No. 158824 (Mich.Ct. App.) at 9.[7]

The trial court's ruling on Petitioner's conflicted representation claim after the *Ginther* hearing is also very brief. As with the Michigan Court of Appeals, the trial court focused on the trial, stating the following:

> [T]his court notes that the appellate courts have indicated and recognized that it is possible for an attorney to represent both defendants in a trial as long as there's the appropriate disclosures, as long as they do not have the— and again the emphasis is at trial, and as long as there's an appropriate disclosure of that and not mutually irreconcilable defenses.
>
> In this case it's even different because Goldstein was out after the final conference. Butler was in well in advance of

---

7. As noted, Judge White dissented and would have remanded to the trial court for a hearing "to inquire into the circumstances surrounding defendant's request for new counsel."

*People v. Robinson,* No. 158824 (White, J., concurring in part and dissenting in part at 2).

the trial in this particular matter and, in fact, did conduct the preliminary exam in File 92–8956 in front of Judge Waterstone.

. . . . .

Based upon all of those items, the court files, both court files, Exhibits A, B, and C, the arguments of counsel, the transcripts of the jury—waiver trials, that actual exams in the other file, the waiver trial transcripts and the testimony and having had the opportunity to assess the credibility of the witnesses who are— testified at trial, the court does not find that the defendant has met the appropriate standard to establish a conflict of interest in this case and that the defendant was not denied the effective assistance of counsel in this particular matter.

Post–Conviction *Ginther* Hearing at 208–209.

█ The Michigan Court of Appeals' and trial court's decisions are unreasonable applications of clearly established Supreme Court precedent in several respects.

First, the Michigan Court of Appeals' decision is based upon a misunderstanding of the basic facts of Petitioner's conflict of interest claim,[8] and a misunderstanding of the body of Supreme Court case law governing conflict of interest claims. The Michigan Court of Appeals stated, "The record indicates that defendant and his codefendant were apparently represented by attorneys associated in the same law firm." *Robinson,* slip op. at 9. The record clearly shows that Petitioner and Thacker were represented by the *same* attorney until the final pretrial conference. Thus,

the Michigan Court of Appeals analyzed Petitioner's claim *only* with respect to what occurred from the point at which Petitioner and Thacker were represented by associates in the same firm. The Michigan Court of Appeals simply ignores what is clear from the record: many important strategic, trial preparation decisions were made when Petitioner and Thacker were represented by the same attorney. These decisions include: waiving the preliminary examination in Petitioner's kidnapping case; failing to file pre-trial motions to suppression identification and for an evidentiary hearing; and possibly declining to pursue the possibility of plea negotiations. Further, Petitioner's attorney at the final conference and at trial was an employee of Ronald Goldstein, not an independent attorney.

The Supreme Court has held that the Sixth Amendment right to counsel attaches after "adversary judicial proceedings" have been initiated, "whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). This right to counsel is a right to counsel free from conflict. *Holloway,* 435 U.S. at 483–84, 98 S.Ct. 1173. The Michigan Court of Appeals, in considering only whether a conflict existed during the time period when Petitioner and Thacker were represented by different attorneys (albeit from the same law firm) ignored Petitioner's Constitutional right to counsel free from conflict from the onset of adversary judicial proceedings. *See id.*

Second, both the Michigan Court of Appeals' and trial court's reviews of whether

---

**8.** The Court notes that the Michigan Court of Appeals' decision was based upon a poorly developed record because the court denied Petitioner's motion for a *Ginther* hearing. The failure to grant a *Ginther* hearing on direct appeal made it difficult to find out what happened, as many questions at the belated hearing were answered with "I do not remember."

a conflict existed and whether adverse effects resulted therefrom are of far too narrow and limited a focus. The Michigan Court of Appeals inexplicably limits its examination to potential adverse effects *during* trial. The Michigan Court of Appeals concluded that no conflict existed because co-defendant Thacker's counsel Goldstein did not elicit testimony damaging to Petitioner, or present a directly antagonistic defense. Similarly, the trial court's analysis also focuses almost exclusively on the trial. The trial court stated that, in deciding a conflict of interest claim, the "emphasis is at trial." Post–Conviction *Ginther* Hearing at 208–09. Neither the trial court nor the Michigan Court of Appeals addressed pre-trial matters. Additionally, neither court considered that there was an ongoing conflict as Mr. Butler was an employee of Mr. Goldstein. This focus on potential adverse effects *during* trial, with almost no consideration of the possibility that adverse effects might manifest themselves *prior* to trial, is in direct contravention of clearly established Supreme Court precedent. The Supreme Court has clearly found that the adverse effects from a conflict of interest may manifest themselves not only at trial but during pretrial and sentencing proceedings and that such proceedings must be considered when examining a potential conflict of interest. *Holloway*, 435 U.S. at 490–91, 98 S.Ct. 1173.

Further, the trial court, in finding that no conflict existed, completely ignored, without explanation, counsel Goldstein's *Ginther* hearing testimony that he concluded sometime before trial that a conflict existed and that this conflict prompted him to advise Petitioner to retain different counsel. The trial court appeared to believe that Petitioner's conflicted representation argument is substantially undercut by the fact that Petitioner and his co-defendant were represented by different attorneys at trial. This is unreasonable for several reasons. First, the conflicts problem is not remedied by handing over representation of one co-defendant who is facing by far the most serious charge to a salaried employee or associate, while the employer-attorney continues to represent the co-defendant who faces a much less serious charge. Second, it is contrary to clearly established United States Supreme Court law to say that the emphasis must be on the trial.

There was an actual conflict of interest in this case based upon the nature of the charges brought against each defendant, which differed markedly in severity. On the facts alleged, both co-defendants could and should have been charged with kidnapping and attempted kidnapping.[9] However, only Petitioner was charged with the life offense of kidnapping, while his co-defendant Thacker was charged only with the five-year offense of attempted kidnapping. This created a strong incentive for Thacker to proceed to trial as rapidly as possible, to avoid having the complaint amended to charge him with kidnapping.

Review of the record indicates that this is what happened. While Ronald Goldstein was still representing both Petitioner and Thacker, the two co-defendants both waived preliminary examination on the charges they then faced. It is undisputed that, had the preliminary examination been

---

**9.** Lashelle Barnes testified that Petitioner grabbed her, forced her into a car, and stayed with her at several locations until she was released. Lashelle also identified Thacker at a lineup. Michelle Barnes identified Petitioner as the man who grabbed her sister Lashelle and forced her into the car. Michelle also identified Thacker as the driver of that car. Under these facts, both Petitioner and Thacker could have been charged with kidnapping, either both as principals, or one as principal and one as aider and abettor.

held for Thacker at that time, the prosecution could have amended the complaint against Thacker to include the kidnapping charge. Thus, Thacker had an extremely strong incentive not to have a preliminary exam.

A preliminary examination on the kidnapping charge would not have carried the same risk for Petitioner. While Petitioner's charges could have been amended to include an attempted kidnapping charge, this would have had no practical effect as an attempt conviction would have a five-year maximum, which would be served concurrently to a kidnapping conviction under Michigan law. It was unlikely that Petitioner would be convicted of attempted kidnapping of Michelle Barnes and acquitted of kidnapping Lashelle Barnes, but the attempt conviction would not have lengthened Petitioner's sentence.

At the time of these proceedings, Michigan recognized the importance of the preliminary examination for preparation and evaluation, in addition to being a screening device. *People v. Duncan,* 388 Mich. 489, 201 N.W.2d 629 (1972) overruled by *People v. Glass,* 464 Mich. 266, 627 N.W.2d 261 (2001). Attorney Fishman, who testified as an expert witness at the Ginther hearing, noted the importance of the preliminary examination as an evaluation tool.

> If you see the witness and the witness testifies and the witness has 20–20 vision, knew the defendant, described him to a tee, identifies him in court, *et cetera,* then at least you'll be in a position where you can make some reasonable statement to the defendant that the odds are he's going to lose if he has a trial, and the opposite obviously applies as well.

Q And at that point you might be investigating a plea on his behalf if you decide that this is a good witness?

A It's—it's essential to know I think, particularly you're saying in a life offense, it's essential to know what you're up against. There's no sense giving the defendant bad advice if you have a chance to negotiate. I mean if I can use an example, I just concluded a case in front of Judge Kenny on two robberies that it wouldn't have mattered who tried the case, who defended the case, the defendant was going to get convicted and get a lot of time. And instead of—we had the hearing, listened to the witnesses and became obvious to everybody and we made a plea and probably cut his time by two-thirds I would say.

Post–Conviction *Ginther* hearing at 169–70.

Given Petitioner's defense of mistaken identity, a preliminary examination on the kidnapping charge would have given the defense the opportunity to develop impeachment material regarding possible weaknesses and inconsistencies in the testimony of the nine-year-old kidnapping complainant. Such impeachment material could be useful at trial, or in plea negotiations. Alternatively, if complainant appeared to be a strong witness at the preliminary exam, this could have provided an incentive for Petitioner to explore possible plea negotiations.

On July 31, 1992, a preliminary examination was held on Petitioner's added attempted kidnapping charge. The only witness was the complaining witness Michelle Barnes. Lashelle Barnes, the complaining witness in Petitioner's kidnapping case, did not testify at the preliminary examination on the attempted kidnapping charge.

Attorney Butler cross-examined Michelle Barnes at the preliminary examination, eliciting admissions that Michelle

Barnes had only seen the man she identified as Petitioner for a brief time. She had never seen him before the incident. She also said that she was preoccupied with trying to help her sister escape and get away herself, not with getting a good look at the man, during the incident.

At Petitioner's single waiver trial on both the kidnapping and attempted kidnapping charges, attorney Butler made use of preliminary examination material when cross-examining Michelle Barnes, the complaining witness in the attempted kidnapping charge. Petitioner was acquitted of the attempted kidnapping charge. No preliminary examination material was developed in Petitioner's kidnapping charge involving complaining witness Lashelle Barnes, because no preliminary examination was held in the kidnapping case.

Similarly, the defense filed no pre-trial motions to challenge the admissibility of the Barnes sisters' identification testimony, or for an evidentiary hearing to challenge the constitutionality of the pretrial identification procedures pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Defense counsel Butler also failed to file a pretrial motion to suppress identification testimony, a more normal procedure for presenting such a motion than after the witness had already testified. This was another missed opportunity to develop impeachment material before trial. Holding a *Wade* hearing before trial may have postponed the final conference date. It would have required the prosecution to review the co-defendants' files, thereby increasing the probability that Thacker would be charged with kidnapping. Here again, as with the preliminary examination, such a hearing would have been potentially more important for Petitioner, but potentially more dangerous for Thacker. And, here again, it was not held. Counsel failed to

do something that was potentially disadvantageous for Thacker, but potentially advantageous for Petitioner. This is strong circumstantial evidence that counsel chose to accommodate Thacker's interests over Petitioner's. *See McFarland*, 356 F.3d at 706.

Respondent implies that, since a motion challenging admissibility of the identification testimony was filed mid-trial and reasonably denied, Petitioner cannot show any adverse effect from the failure to hold such a hearing before trial. It is true that Petitioner cannot show *Strickland* prejudice, as the motion was made during the bench trial and denied on a reasonable basis. However, this does not mean that a *Wade* hearing would not have been useful in developing impeachment material, or in discovering its absence. Once an actual conflict is proven, a petitioner need only demonstrate an adverse impact on his counsel's performance. *Thomas v. Foltz*, 818 F.2d at 482. Moreover, the Court discerns no possible benefit to Petitioner by waiting to challenge the identification testimony until after all witnesses had testified. The Court believes that a prudent attorney, unencumbered by any conflict of interest, would have preferred to know before trial whether the identification testimony was admissible. Petitioner's attorney would have been better able to prepare for trial in general, and cross-examination in particular, if the issue had been resolved prior to trial.

The Sixth Circuit has stated that

[e]ven where the lawyer omitted some course of action that undoubtedly would have been advantageous to the defendant, there is no proof of adverse effect if there is some other *adequate* explanation for the omission.

*McFarland*, 356 F.3d at 707(emphasis added).

The Sixth Circuit also stated,

[o]n the other hand, where counsel's choices worked to the defendant's detriment but to the benefit of another client, and there was no other explanation for counsel's choices, we have considered the choices themselves evidence of disloyalty.

*Id.*

In this case, both counsel Goldstein's choice to waive the preliminary examination on Petitioner's kidnapping charge and Thacker's attempted kidnapping charge, and counsel Butler's choice to postpone seeking suppression of identification testimony until midtrial after all testimony had been given, worked to the benefit of Thacker and to the detriment of Petitioner. The Court, thus, must consider whether there was an *adequate* explanation for these choices.

At the *Ginther* hearing, counsel Goldstein explained that he chose not to have a preliminary examination on Petitioner's kidnapping charge and Thacker's attempt charge because he did not wish to preserve the testimony of the complaining witnesses. This explanation is unreasonable and inadequate. The witnesses were very young and not suffering from an ailment which would make their appearance at trial unlikely. They were young enough and the alleged events were stressful enough to suggest that valuable impeachment material might be developed at pretrial proceedings, but not so young as to suggest that their memories might fade entirely if their testimony was put off for the relatively brief time between pretrial proceedings and trial.

In fact, the importance of a preliminary examination is magnified when dealing with a child witness. "Some studies show that children are substantially more vulnerable to suggestion than adults, and often unable to separate recollected fantasy (or suggestion) from reality." *Maryland*

*v. Craig,* 497 U.S. 836, 868, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (Scalia, J. dissenting), *citing* Lindsay & Johnson, *Reality Monitoring and Suggestibility: Children's Ability to Discriminate Among Memories from Different Sources,* from Children's Eyewitness Memory 92 (S. Ceci, M. Toglia, & D. Ross eds.1987); Feher, *The Alleged Molestation Victim, The Rules of Evidence, and the Constitution: Should Children Really be Seen and Not Heard?,* 14 Am. J.Crim. L. 227, 230–33 (1987); Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews,* 62 Wash. L.Rev. 705, 708–11 (1987). Given the suggestibility of child witnesses, it is possible that, as she was prepared to testify for trial, Lashelle's certainty that Petitioner was her abductor may have increased due to prompting and rehearsal by the prosecutor. Petitioner will never be able to establish that a preliminary examination would have yielded from Lashelle testimony with which she could later be impeached. However, Petitioner need not satisfy such a standard to show that his attorney labored under a conflict of interest. *See Mickens,* 535 U.S. at 168, 122 S.Ct. 1237 ("Counsel's conflicting obligations to multiple defendants effectively sea[l] his lips on crucial matters thus preventing counsel from making an adequate record to establish prejudice.") (internal quotation omitted). He need only show that his attorney refrained from doing something which would have been advantageous to Petitioner (demanding a preliminary examination) without adequate explanation. Petitioner has satisfied that standard.

The more than hypothetical possibility that useful impeachment evidence may have been garnered from a preliminary examination on the kidnapping charge is best illustrated by looking to the usefulness of the testimony adduced at the pre-

liminary examination on the attempted kidnapping charge. Counsel Butler effectively weakened Michelle Barnes' trial testimony by cross-examining her with her preliminary examination testimony. Petitioner was acquitted of that charge. Petitioner's acquittal is circumstantial evidence that the decision to waive his preliminary examination on the kidnapping charge had an adverse impact on the defense.

Similarly, counsel Butler's testimony at the *Ginther* hearing attempting to explain his decision to wait until after the witness testified to move suppress the identification testimony is unreasonable and inadequate. Counsel Butler explained that he did not seek a suppression hearing before trial because he had not looked at the photos used in the photographic lineup array before trial (which showed that Petitioner's photo was the only non-Polaroid photo in the array and the only one in the array in which the subject had placard with a booking number on his chest showing he was under arrest). Petitioner's defense was mistaken identity. Under these circumstances, failing to look at the photo array from which he was identified before trial was deficient performance with respect to Petitioner, but certainly worked to Thacker's advantage as it continued to move the case toward trial without delay. It is no wonder that Butler initially argued that he was unprepared for trial and moved for an adjournment. An admission of deficient performance is not an adequate explanation for an omission or choice which works to the detriment of an attorney's client and to the benefit of his codefendant represented by the attorney's associate and/or employer.

[I]n a case of joint representation of conflicting interests the evil—it bears

repeating—is what the advocate finds himself compelled to *refrain* from doing. . . .

*Holloway v. Arkansas*, 435 U.S. at 490, 98 S.Ct. 1173 (emphasis in original).

Here, refraining from holding a preliminary examination on Petitioner's kidnapping charge or asserting a pretrial challenge to the photo array may well have prevented counsel from developing useful impeachment material and preparing for trial. "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." *Holloway*, 435 U.S. at 489–90, 98 S.Ct. 1173. For example, this Court is unable to ascertain what effect the conflict may have had on counsel's willingness to pursue plea negotiations on Petitioner's behalf. *See Holloway*, 435 U.S. at 491, 98 S.Ct. 1173 ("To assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible.").

It is undisputed that Petitioner did not waive the right to conflict-free counsel. It is also undisputed that the trial judge did not conduct an inquiry into possible conflicts of interest which the charge discrepancy between the codefendants and the prosecution's attempts to add the kidnapping charge the complaint against Thacker strongly suggested.[10] There was an actual conflict of interest in this case, because of the discrepancies between the charges and the defenses of Petitioner and co-defendant Thacker.

The Court concludes that the Michigan Court of Appeals' and trial court's conclusions that there existed no conflict of interest which adversely affected counsel's performance was an unreasonable application

---

10. "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry."

*Cuyler v. Sullivan*, 446 U.S. at 346, 100 S.Ct. 1708.

of clearly established Supreme Court precedent. In reaching their conclusions, both state courts ignored and/or unreasonably applied controlling Supreme Court precedent. The state courts failed to consider the impact of a conflict of interest on pretrial proceedings. *See Holloway*, 435 U.S. at 490, 98 S.Ct. 1173 (recognizing that an attorney's conflict of interest may adversely effect all aspects of an attorney's representation, including pretrial proceedings). The state courts further failed to recognize and consider that the "evil" in conflict of interest cases frequently manifests itself not in the action an attorney takes as a result of the conflict, but in what the attorney is "compelled to *refrain* from doing." *Id.* (emphasis in original). As discussed, this evil clearly manifested itself in Petitioner's case when counsels Goldstein and Butler failed to aggressively defend Petitioner prior to trial. The Court, therefore, finds that Petitioner is entitled to habeas corpus relief with respect to this claim.

## B. Petitioner was denied his right to testify on his own behalf by counsel's failure to prepare and the conflict of counsel.

Petitioner also claims that a writ of habeas corpus should be issued because the trial judge's "unreasonable and arbitrary insistence on proceeding with the unwanted and conflicted attorney violated" Petitioner's "Fifth Amendment right to testify on his own behalf."

During trial, Petitioner informed the court that he did not want to proceed with Counsel Butler as his attorney because he was not "being represented right." The trial court judge stated that he did not care and adjourned the trial for approximately ten days so the defense could attempt to locate missing witnesses. When the trial resumed, counsel Butler informed the Court that Petitioner did not wish to proceed with Butler as his attorney. The trial court asked Petitioner whether he was prepared to defend the case himself. When Petitioner stated that he was not, the trial court denied the motion. Petitioner then stated that he wanted to testify in his own defense, but not with counsel Butler as his attorney. The trial court responded:

> Mr. Robinson, we're either going to proceed with this case with your testimony at this time, or if you refuse to testify, even with this lawyer or in representing yourself, then this case will be concluded. I'll give you that option at this point.

Tr., 8/26/92, p. 6. Petitioner declined to testify with counsel Butler as his attorney.

The Michigan Court of Appeals held that "the record reveals no irreconcilable, *bona fide* dispute between defendant and his counsel warranting the substitution of counsel." *People v. Robinson*, Mich. Ct. App. Docket No. 158824 at 10. Therefore, the Michigan Court of Appeals found no constitutional violation in the trial court's denying Petitioner's request to retain new counsel and requiring him to proceed with the counsel he had or, alternatively, without counsel. Judge White, writing in dissent, concluded

> that while the court may have ultimately been within its discretion in denying defendant's request [to obtain new counsel], the court abused its discretion when it denied defendant's request without making inquiry into the bases of his request under the circumstances that defendant may have had a good reason for making the request, and the granting of the request may not have unreasonably disrupted the judicial process.

*Id.* at 1 of dissenting opinion (White, J., concurring in part and dissenting in part).

█ The constitutional right of a defendant to testify at trial is well established

and subject only to a knowing and voluntary waiver by the defendant. *Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Citing *Rock,* the Sixth Circuit has held that the right to testify is a fundamental right. *Neuman v. Rivers,* 125 F.3d 315, 318 (6th Cir.1997).

In federal court, when reviewing whether a district court abused its discretion in denying a defendant's motion to substitute counsel, appellate courts generally consider the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. *See, e.g., United States v. Gallop,* 838 F.2d 105, 108 (4th Cir.1988); *United States v. Whaley,* 788 F.2d 581, 583 (9th Cir.1986); *United States v. Rogers,* 769 F.2d 1418, 1423 (9th Cir.1985); *cf. Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985).

Judicial review obviously necessitates that such an inquiry be based upon a request. In the present case, Petitioner informed the trial judge that he wanted to discharge attorney Butler because he believed that he was not being represented properly and that his family was attempting to retain another lawyer. Petitioner also informed the trial court that he wanted to testify, but not with attorney Butler as his lawyer.

The trial court offered Petitioner the choice between the assistance of conflicted counsel (Butler) or proceeding without counsel. Thus, Petitioner was forced to choose between exercising his right to testify and his right to conflict-free counsel.

In *United States v. Johnson,* 555 F.2d 115, 120 (3d Cir.1977), the Fifth Circuit Court of Appeals summarized the unfairness of forcing such a choice upon a defendant:

A defendant in a criminal proceeding is entitled to certain rights and protections which derive from a variety of sources. He is entitled to all of them; he cannot be forced to barter one for another. When the exercise of one right is made contingent upon the forbearance of another, both rights are corrupted.

*Johnson,* 555 F.2d at 120.

■ In this case, Petitioner was entitled both to testify in his own defense and to be represented by conflict-free counsel. The trial court forced Petitioner to choose between these two rights. The Michigan Court of Appeals held that the trial court was not in error because no *"bona fide* dispute existed between defendant and his counsel." *Robinson,* slip op. at 10. The state court's decision was based upon its conclusion that no conflict existed. As discussed *supra,* that conclusion was an unreasonable application of Supreme Court precedent. Similarly, the Michigan Court of Appeals' decision that the trial court did not err in forcing Petitioner to choose between testifying in his own defense, a right secured by *Rock v. Arkansas,* 483 U.S. at 44, 107 S.Ct. 2704, and his right to conflict-free counsel, a right guaranteed by the Sixth Amendment, and *Holloway,* 435 U.S. at 483–84, 98 S.Ct. 1173, is an unreasonable application of Supreme Court precedent. The Court shall therefore grant habeas corpus relief on this claim.

**C. Right to counsel was denied by dual representation where there was a conflict in interest.**

■ An accused has the right to counsel who is free from any conflict. That is, an accused is entitled to a lawyer whose only interest in the case is that of the accused. *Holloway,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426. A defendant is entitled to automatic reversal where "defense counsel

is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." *Mickens*, 535 U.S. at 168, 122 S.Ct. 1237, *citing Holloway*, 435 U.S. at 489–90, 98 S.Ct. 1173. The Sixth Circuit Court of Appeals has interpreted the automatic reversal rule to apply when "a defendant *or* defense counsel makes a timely objection to joint representation." *McFarland*, 356 F.3d at 702 n. 4 (emphasis in original).

The Sixth Circuit has explained the justification for the automatic reversal rule:

> The reason for this automatic reversal rule is that "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." The record will ordinarily not memorialize mistakes of omission as it does affirmative instances of trial error, so for courts to evaluate the existence and effect of such omissions would entail "unguided speculation."

*McFarland*, 356 at 700.

Here, Petitioner advised the trial court that he was dissatisfied with his attorney's performance. The trial judge presided over Petitioner's calendar conference, final conference, and trial. The trial judge ruled in co-defendant Thacker's favor concerning amending his charges to include the kidnapping charge and denying the prosecution's motion to dismiss the attempted kidnapping charge against Thacker. The trial judge was, of course, aware of the discrepancy of the charges between the co-defendants.

■ At the calendar conference and at the final conference, Ronald Goldstein represented Petitioner and his co-defendant. At trial, Petitioner was no longer represented by Goldstein, who remained counsel for Thacker, but Petitioner was represented by Butler, an associate of Goldstein. While Petitioner did not specifically advise the court that his attorney had a conflict of interest, under these factual circumstances, Petitioner's expressed dissatisfaction with his attorney triggered the trial judge's obligation under *Holloway* and *Mickens* to inquire whether a conflict of interest existed. Yet, the trial court failed to inquire into the basis for Petitioner's complaint.

The Michigan Court of Appeals' finding that "no objection appears on the record below to the representation of defendant and his codefendant by attorneys associated in the practice of law" is an unreasonable determination of the facts. On the facts of this case, failing to analyze Petitioner's conflicted counsel claim under *Holloway* and *Mickens* was an unreasonable application of clearly established Supreme Court law.

Additionally, this Court is not persuaded that appropriate disclosures were made to Petitioner which could have resulted in waiver of his conflict of interest claim. It is undisputed that, despite Petitioner having been charged with a life offense while his co-defendant was charged with only a five-year offense arising out of the same incident, and despite being represented first by the same attorney and later his former attorney's employee, Petitioner never waived the right to conflict-free counsel and the trial court never responded to Petitioner's complaint by initiating an inquiry into the matter.

Thus, the Michigan courts' failure to grant Petitioner relief from his conviction under the automatic reversal rule of *Holloway* and *Mickens* was an unreasonable application those cases. Consequently, this is an additional, alternative basis supporting federal habeas corpus relief from Petitioner's conviction and sentence.

## VI. *Conclusion and Order*

For all of the above stated reasons, this Court concludes that the Michigan state

court decisions denying Petitioner's Sixth Amendment claim that he was denied the right to unconflicted counsel are unreasonable applications of Supreme Court precedent. Petitioner has shown that an actual conflict of interest adversely affected his attorneys' performance. Prejudice is presumed in such a case. *Cuyler v. Sullivan,* 446 U.S. at 335, 100 S.Ct. 1708. Petitioner is entitled to habeas relief on this claim.

Petitioner also has shown that he timely objected to his attorney's representation. The Michigan Court of Appeals failure to automatically reverse Petitioner's conviction because the trial court failed to ascertain whether a conflict existed was an unreasonable application of *Holloway* and *Mickens.*

Petitioner's right to testify was also violated. As explained above, the Michigan courts' rulings to the contrary are unreasonable applications of and contrary to controlling United States Supreme Court precedent. Petitioner is therefore entitled to habeas relief under the AEDPA.

Based upon the foregoing, **IT IS OR-DERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED.** The State of Michigan must provide Petitioner a new trial within ninety (90) days or release him. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.